UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARIA TIU-MALABANAN,

                                  Plaintiff,

                    -vs-                            DECISION and ORDER

UNIVERSITY OF ROCHESTER, SCHOOL OF         07-CV-6499-CJS
NURSING AND HEATHER MUXWORTHY,

                               Defendants.
_____

**APPEARANCES**

For Plaintiff:                        Christina A. Agola, Esq.
                                  Jason A. Little, Esq.
                                  730 First Federal Plaza
                                  28 East Main Street
                                  Rochester, NY 14614
                                  585-262-3320

For Defendants:                  Trent M. Sutton, Esq.
                                  Nixon Peabody LLP
                                  Clinton Square
                                  P.O. Box 31051
                                  Rochester, NY 14603
                                  585-263-1221

**INTRODUCTION**

      This discrimination case is before the Court on Defendants' motion to dismiss (Docket No. 6) and Plaintiff's cross-motion to amend her complaint (Docket No. 10). For the reasons stated below, Plaintiff's cross-motion is granted, and Defendants' motion to dismiss is granted in part, and the Court declines jurisdiction over the remaining state cause of action.

## BACKGROUND

Plaintiff, formerly a nursing student at the University of Rochester School of Nursing, filed a complaint on October 11, 2007, raising three causes of action, two pursuant to 42 U.S.C. § 1981, based on her allegations that Defendants had discriminated against her because of her national origin and race, and retaliated against her when she complained of such discrimination. Her third cause of action is a state law claim for breach of an implied contract. On December 5, 2007, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and on December 19, 2007, Plaintiff filed a cross-motion seeking to amend her complaint pursuant to Rule 15. Defendants responded to Plaintiff's cross-motion by a reply filed on January 10, 2008.

The essential factual allegations in Plaintiff's proposed amended complaint are as follows:

> 7. Plaintiff was born on January 30, 1968 in Quezon City Phillippines, with an ethnicity and citizenship of "Filipino."
>
> 8. Plaintiff was married in Quezon City Phillippines on June 20, 1994 to Ben B. Malabanan Jr., an American citizen.
>
> 9. Plaintiff lived solely as a Filipino citizen until November 24, 1999, when she was naturalized as a citizen of the United States of America. Upon information and belief, however, Plaintiff maintained a dual citizenship.
>
> 10. Plaintiff was a nursing student with the named defendant since the summer of 2007. Accordingly, Plaintiff paid tuition to attend defendant's nursing program with the reliance that she would be able to complete said program and become a Registered Nurse.
>
> 11. It is well settled that a contract for educational services is a "contract" for the purposes of § 1981.
>
> 12. Plaintiff enjoyed above average evaluations as a student nurse, and as such, Plaintiff was qualified to fulfill the essential functions of the nursing program.

13. From the commencement of the program, Plaintiff was told on a near daily basis by Clinical Instructor Muxworthy that because she was a Filipino, her "thought process wasn't there" and that she would never become a nurse, further mocking Plaintiff's language skills. This severe and pervasive harassment created a hostile environment for Plaintiff based on her race (Asian), which encompasses and includes her ancestry and/or ethnic characteristics.

14. Plaintiff's Clinical Instructor also frequently informed Plaintiff that she could not be "trusted" and that Plaintiff might actually injure or kill her patients. Plaintiff's Clinical Instructor was and is a supervisor with defendant, thereby imputing knowledge of the discriminating conduct squarely on defendant.

15. This same Clinical Instructor would constantly speak down to Plaintiff, isolate her, fail to give her any guidance, and insult her language skills and humiliate Plaintiff in front of the entire clinical class by informing her classmates that she was failing. This conduct was done because of Plaintiff's race, which encompasses her ancestry and/or ethnic characteristics.

16. Plaintiff was further informed by the Clinical Instructor that [Plaintiff] was not "wanted" by her patients. This conduct was done because of Plaintiff's race, which encompasses her ancestry and/or ethnic characteristics.

17. Ultimately, Plaintiffs Clinical Instructor warned Plaintiff that she would *not* become a nurse and that she would make sure that was not going to finish her course work. This conduct was done because of Plaintiffs race, which encompasses her ancestry and/or ethnic characteristics.

18. Plaintiff complained about her Clinical Instructor's conduct to the appropriate management official that she believed she was being treated in a disparate fashion on the basis of her race which encompassed her ancestry and/or ethnic characteristics; specifically, no other Caucasian nursing student was subject to the same treatment set forth in ¶¶ 10 through 14 above. Defendant, thus, had actual knowledge of the severe and pervasive racially, ancestrally, and ethnically discriminatory conduct of its supervisory employees.

19. Thereafter, Plaintiff received an "Academic Warning" drafted by Clinical Instructor Muxworthy on or about August 7, 2007, informing Plaintiff that while she would receive a new Clinical Instructor, she was still failing her courses.

20. Plaintiff was compelled to resign from the nursing program because of the racial, ancestral and ethnical discrimination by defendant. Plaintiff, therefore: suffered a materially adverse action, as she was constructively expelled from her schooling with defendant.

21. Plaintiff was not reimbursed any of her tuition which she paid to the nursing program.

(Proposed First Amended Complaint ¶¶ 7–21.) The proposed amended complaint raises the same three causes of action as were plead in the original complaint: hostile environment and harassment pursuant to 42 U.S.C. § 1981; retaliation pursuant to § 1981; and a state law breach of an implied contract claim.

## STANDARDS OF LAW

The Federal Rules of Civil Procedure provide that leave to file an amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend may be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also United States v. Continental Illinois Nat. Bank and Trust Co.*, 889 F.2d 1248, 1254 (2d Cir. 1989).

In *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), the Supreme Court clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief

> above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

Title 42 of the U.S. Code, provides in pertinent part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1991) (origin: Act May 31, 1870, c. 114, § 16, 16 Stat. 144).

**ANALYSIS**

Since Plaintiff proposes to amend her complaint to remove any deficiencies alleged by Defendants' motion to dismiss, the Court will review the allegations of that document, rather than rely on the previously-filed complaint. Plaintiff's first cause of action is for racial discrimination.

> To establish a claim under § 1981 , a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.).

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Relying on the Supreme Court's holding in *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987), Defendants urge the Court to grant their motion to dismiss Plaintiff's discrimination claims, arguing that what she has plead is a claim for national origin discrimination, which is not actionable. The Court disagrees on this point.

Plaintiff's factual allegations in the proposed amended complaint are sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S. Ct. at 1964-65. In *St. Francis College*, the Supreme Court addressed the issue of a sufficient pleading under § 1981 and, in reversing the lower court's dismissal of the complaint, stated, "[i]f respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *St. Francis College*, 481 U.S. at 613. Here, the proposed amended complaint sufficiently alleges that Muxworthy treated Plaintiff the way she did because Plaintiff was born a Fillipino.

In that regard, Plaintiff alleges that Muxworthy told her on a nearly daily basis that, "because she was a Filipino, her 'thought process wasn't there' and that she would never become a nurse, further mocking Plaintiff's language skills." (Proposed Am. Compl. ¶ 13.) Though the law in this area is less than clear[1] (primarily because of how of "race" was perceived in 1870 when § 1981's predecessor statute was enacted by Congress), *St. Francis College* supports the argument that Plaintiff is alleging Muxworthy discriminated against her because of her national origin or ancestry, not simply because Plaintiff was born in the Philippines. This addresses the first two § 1981 factors: a plausible claim of intentional race discrimination based on Plaintiff's membership in an racial minority.

Turning to the third factor in a § 1981 cause of action, Plaintiff states that the alleged discrimination affected her ability to enjoy the benefits of her contract with the University and obtain the promised instruction. The phrase "make and enforce contracts," as used in

---

[1] Justice Brennan noted the following in his concurring opinion in *St. Francis College*: I write separately only to point out that the line between discrimination based on "ancestry or ethnic characteristics," ante, at 2028, and discrimination based on "place or nation of...origin," ibid., is not a bright one. It is true that one's ancestry-the ethnic group from which an individual and his or her ancestors are descended-is not necessarily the same as one's national origin-the country "where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 88 (1973) (emphasis added). Often, however, the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group. Moreover, national origin claims have been treated as ancestry or ethnicity claims in some circumstances. For example, in the Title VII context, the terms overlap as a legal matter. *See* 29 CFR § 1606.1 (1986) (emphasis added) (national origin discrimination "includ[es], but [is] not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural, or linguistic characteristics of a national origin group"); *Espinoza, supra*, at 89 (the deletion of the word ancestry from the final version of § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(e), "was not intended as a material change, ... suggesting that the terms 'national origin' and 'ancestry' were considered synonymous"). I therefore read the Court's opinion to state only that discrimination based on birthplace alone is insufficient to state a claim under § 1981.

*Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 614 (1987).

§ 1981, encompasses "the making performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In an analogous case, the Southern District of New York in *Rodriguez v. New York University*, No. 05 Civ. 7374 JSR, 2007 WL 117775, *4 (S.D.N.Y. Jan. 16, 2007) wrote:

> Mr. Rodriguez first alleges that he was "teased, insulted, mocked, degraded, and ridiculed [by Professor O'Connor and by fellow students] as a member of [a] particular minority group" in his Workplace Learning class. He also alleges that Professor Borisoff failed to mediate the dispute between himself and Professor O'Connor. (Complaint, ¶ 3). However, under New York law, while a student can sue his school for breach of contract, "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." *Gally v. Columbia University*, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998). Breach of contract claims brought by students against universities are "subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." *Babiker* [*v. Ross Univ. School of Medicine*, No. 98 CIV 1429 THK, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000)] (internal quotation marks and alteration omitted); *see also Ward v. New York University*, No. 99 Civ. 8733, 2000 WL 1448641, at *3 (S.D.N.Y. Sept. 28, 2000). Mr. Rodriguez does not point to any contractual obligation on the part of the University to prevent students from being "intimidated and discouraged ...from participating in class discussions." (Complaint, ¶ 3). Nor does he point to any contractual obligation to mediate disputes between students and professors. Accordingly, Mr. Rodriguez's experiences in his Workplace Learning class cannot support his § 1981 claim.

*Rodriguez*, 2007 WL 117775 at *4 (footnote omitted). In the proposed amended complaint, Plaintiff alleges as part of her first cause of action that, "Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate racial, ancestral and/or ethnic characteristic harassment from the workplace and to prevent it from occurring in the future." (Compl. ¶ 31.) This is similar to the allegation held insufficient in *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) ("In support of her claim, plaintiff points to

a provision in SDOS's Code of Conduct, which provides 'all students should receive fair and equal treatment.' This provision, however, is merely a general statement of adherence by SDOS to existing anti-discrimination laws. It does not create a separate and independent contractual obligation."). Like the plaintiff in *Rodriguez*, Plaintiff here relies on § 1981's protection of the right to contract, but does not identify that she had a contractual relationship with Muxworthy, or identify the terms of the implied contract with the University that either Muxworthy or the University breached. Plaintiff's general recitation of anti-discriminatory duties is, as was the case in *Gally*, merely a restatement of current law. Absent allegations that Plaintiff's right to contract was breached, the § 1981 claim cannot survive a motion to dismiss under Rule 12(b)(6). *Rodriguez*, 2007 WL 11775.

Turning to Plaintiff's second cause of action for retaliatory constructive discharge, the Court notes that, "[t]he gravamen of a retaliation claim under § 1981 is the allegation of discriminatory treatment because of the filing of a discrimination charge, as distinct from discriminatory treatment on account of race or color in the first instance." *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir. 1984). Plaintiff claims that after complaining (no date is mentioned)[2] about her treatment at Muxworthy's hands to "appropriate management official," Plaintiff received, on August 7, 2007, an "Academic Warning" notifying her that she was failing her courses. (Proposed Am. Compl. ¶ 19.) Since the proposed amended complaint does not allege any dates other than the date Plaintiff received the warning, the Court cannot determine whether her grievance about Muxworthy was in close proximity to her warning letter. Moreover, Plaintiff does not allege that she was

---

[2]Plaintiff argues that it must have been in close proximity to her receipt of the warning letter, since Defendants have conceded in their memorandum of law that the entire time Plaintiff was a student encompassed only three months. (Pl.'s Mem. of Law (Docket No. 9) at 12.) However, as Plaintiff well knows, the Court is constrained to examine the four corners of the pleading, Fed. R. Civ. P. 12(d), which does not mention any times.

passing her courses prior to her discrimination complaint to the "appropriate management official," leading to the inference that the letter came as a result of her performance, not because of retaliation. Additionally, the proposed amended complaint does not allege that Muxworthy knew that Plaintiff complained about her, thus begging the question of how the proposed amended complaint shows Muxworthy's warning letter was written in retaliation because Plaintiff complained to an "appropriate management official." The University evidently took her complaint seriously, assigning her a new clinical instructor. (Proposed Am. Compl. ¶ 19.) That she was evidently failing before she complained about Muxworthy's treatment of her (Muxworthy allegedly told "the entire clinical class" that Plaintiff "was failing," Proposed Am. Compl. ¶ 15), and failing after she complained, does not make plausible Plaintiff's assertion that the warning letter, informing her she was failing, which she knew before she received the correspondence, was sent in retaliation for her complaint about Muxworthy. Still further, Plaintiff alleges no facts showing that she was subjected to any purported retaliation other than the letter warning her of her failing status, a status that existed prior to her complaint to the "appropriate management official." Her retaliation claim, therefore, is not plausible.

Defendants also argue that the proposed amended complaint does not sufficiently plead liability on the part of the University. The Court agrees. Plaintiff has applied the vicarious liability theory[3] used in employment cases to show that the University is responsible for Muxworthy's acts. However, in *Flores v. Saulpaugh*, 115 F. Supp. 2d 319 (N.D.N.Y. 2000), the district court reviewed a complaint brought, *inter alia*, under § 1981,

---

[3] "'The doctrine of *respondeat superior* renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment.'" *Flores v. Saulpaugh*, 115 F. Supp. 2d 319, 324-25 (N.D.N.Y. 2000) (quoting *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999)) (other citations omitted).

as well as Title IX of the Education Amendments of 1972, in which the plaintiff student attempted to hold a school district vicariously liable for harassment the student suffered from one of the district's teachers. The district court determined that the school district could not be held vicariously liable for acts that were committed outside the scope of the teacher's employment. *Flores*, 115 F. Supp. 2d at 325. Further, the Court also notes that the U.S. Supreme Court, addressing a case of teacher on student harassment in *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998), determined that a school district could not be held vicariously liable for harassment of the student by a teacher. The Court wrote:

> we conclude that it would "frustrate the purposes" of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of respondeat superior or constructive notice, *i.e.*, without actual notice to a school district official.

*Gebser v. Lago Vista Independent School Dist.*, 524 U.S. at 285. Though the Supreme Court did not directly address a claim brought under § 1981, Plaintiff has provided the Court with no case law or other legal support for the application of vicarious liability to the University for Muxworthy's alleged discriminatory acts. Plaintiff's allegations in the complaint concede that actual notice is necessary since she alleges she reported Muxworthy's behavior to an "appropriate management official," implying that Muxworthy's knowledge of her own acts was not sufficient to put the University on notice. (Proposed Am. Compl. ¶ 18.) Plaintiff cites no case in which a school district or university has been held vicariously liable for the acts of its teacher which were outside the scope of the teacher's employment, nor has she plead any facts to show that Muxworthy's acts alleged to be in violation of § 1981 were part of her duties as a clinical instructor.

**CONCLUSION**

For the foregoing reasons, Plaintiff's cross-motion to amend her complaint (Docket No. 10) is granted, and Defendants' motion to dismiss (Docket No. 6) is granted with respect to the claims brought under 42 U.S.C. § 1981. Since the only remaining cause of action is a state law breach of implied contract claim, the Court elects not to exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c)(3). The Clerk is directed to close this case.

    IT IS SO ORDERED.

Dated:  March 21, 2008

                                 /s/ Charles J. Siragusa
                                 CHARLES J. SIRAGUSA
                                 U.S. DISTRICT JUDGE